*123 OPINION.
MoRRis:
The issue to be determined is the value of certain coal lands acquired by the petitioner in 1902 for all of its capital stock and $51,400 in cash. The petitioner contends that the value of the lands in 1902 was $351,400 and that they have always been carried at that amount on its books. The respondent refused to allow petitioner any value for such lands in computing its invested capital.
In 1902 Prichard, Ferguson, and Miller owned thousands of acres of coal lands, and on or about June 6, 1902, acquired a charter to construct a railroad but were unable to go ahead with it. In the summer of the same year A. J. Perry, with others, looked over these holdings of Prichard and his associates, and Perry, together with Miles, blocked out a tract of 5,140 acres, located approximately 8 miles from the railroad but lying across the mouth of a valley and successfully blocking off thousands of acres above this tract from the railroad.
Pursuant to some plan or agreement among them, which is not in evidence, Prichard and his associates conveyed this tract to W. W. Hughes, Trustee, by deed dated September 1. At that time the coal lands were in an undeveloped state without railroad facilities. Miles and Perry negotiated the financial scheme whereby capital was secured to build the railroad, equip and develop the mine, and pay to Prichard and his associates $51,400 in cash. At some time between September 1 and October 30 Perry and Miles acquired an inteerst in the 5,’140-acre tract, as the deed which conveyed the property on that date to the petitioner ran from Hughes, Trustee, A. J. Perry, George W. Miles and Mattie Miles, as parties of the first part, to the petitioner, as party of the second part.
The consideration stated in the proposition submitted to the petitioner by Perry and Miles and as accepted by the petitioner shows that the lands were acquired by the issuance of all of the petitioner’s capital stock to the six persons specified in the minutes of the stockholders’ meeting held on October 30, the execution of a mortgage on all the property in the sum of $150,000, which was to be used for the purposes set forth in the proposition. Under these facts it seems clear that the lands were acquired in exchange for the petitioner’s capital stock and $51,400 in cash.
It remains to determine whether the property .exchanged for stock had a fair market value equal to the par value of the stock exchanged *124 therefor. The testimony shows that on October 30,1902, the construction of a railroad was assured, and this fact, together with its favorable location, made the tract very valuable. Two witnesses were produced who testified that the value of the coal in 1902, with railroad facilities assured, was one cent per ton. One of the witnesses was a mining fengineer, and the other a coal operator, and also an officer and stockholder of the petitioner. The latter witness testified that the tract had two seams of coal, which fact was known in 1902, and that the estimated minimum tonnage of recoverable coal was 31,090,000 tons. The respondent’s witness was unable to refute this testimony, and these facts, when considered with the fact that petitioner was able to secure a $150,000 mortgage on the property, convince us that these lands had a cash value of $310,900 in 1902 when paid in for capital stock and that the respondent erred in failing to allow any value in the computation of invested capital.
Petitioner adduced testimony to show that the peculiar location of its tract further enhanced its value by something like $40,000 to $50,-000. The testimony with respect thereto consisted of sales in and after 1917 of acreage in the valley above, and haulage charges which were collected on the coal mined in that region and shipped out over its land. We have carefully considered this phase of the case and have given full weight to the matter of location in arriving at the value of $310,900, but we do not believe from the evidence adduced that any further value should be allowed because of this factor.

Judgment will be entered vmder Rule 50.